IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

---

LORI C. COPPERNOLL,

                Plaintiff,                            OPINION AND ORDER

     v.                                               08-cv-382-bbc

MICHAEL ASTRUE,
Commissioner of Social Security,

                Defendant.

---

On June 23, 2009, I remanded this case to the commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g), on the ground that the administrative law judge had failed to make a proper step five determination and to account for plaintiff's headaches in making his decision that plaintiff was not disabled.  Now before the court is plaintiff's application for an award of attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.  Plaintiff is seeking fees in the amount of $8,166.88 for 48.3 hours of work.  Defendant disputes both the amount of the fees sought and the characterization of his position as unjustified.  Because I find that defendant's position was unjustified and that the amount of fees requested is reasonable, with one minor exception, I will grant the petition for an award of fees.  I am reducing the fee award to reflect time that was spent

1

unreasonably on motions for extensions.   With the reduction, the fee award will be $8,065.63.


FACTS

The relevant facts are set forth in the opinion and order of June 23, 2009.  Dkt. #19. To recap, plaintiff is a 43-year-old former department store manager who has degenerative disc disease of the cervical spine, intermittent left shoulder impingement and headaches. The administrative law judge determined that as a result of her impairments, plaintiff was limited to performing sedentary work requiring no more than occasional use of the non-dominant left upper extremity and no more than occasional repetitive head movement.  In response to a hypothetical question, a vocational expert testified that a person with such limitations would be unable to perform plaintiff's past work but would be able to make a vocational adjustment to other jobs existing in significant numbers in the economy, namely, 2,100 jobs as an information clerk and 700 jobs as an interviewer.  Plaintiff challenged the basis of the expert's testimony at the hearing, asking him to identify the skills required to perform the jobs and to provide specific examples of the types of jobs that fell under each occupational category.  In addition, she challenged the reliability of the statistical data on which the expert relied for his testimony regarding the number of jobs available in each category.

After the hearing, plaintiff filed a letter objecting to the reliability of the vocational expert's testimony as to the jobs that plaintiff could perform and their numbers. She presented affidavits showing that one of the jobs the expert had identified was obsolete and that another job did not fit her limitations, and she submitted documentary evidence supporting her contention that the data underlying the vocational expert's opinion was unreliable because it was based upon a flawed method.

In his decision denying plaintiff's application for benefits, the administrative law judge rejected plaintiff's challenges to the vocational expert's testimony. He wrote:

> [T]he undersigned emphasizes that the jobs cited by this expert, as is the case with all experts in disability hearings, are meant to only be representative of the total number of such jobs in the economy. The standard for meeting what is considered a "significant" number of jobs under the current law is not high and, where the functional capacity permits, it is not even remotely surprising that a significant number can be identified in a state with 6 million people. See, e.g., Sullivan v. Lee, 988 F.2d 789 (7th Cir. 1993) (cites a case in which 174 jobs was considered significant). Chipping away at a total of (at least) 2,800 jobs is a red herring approach in this case. It is obvious that unless this 45-year old high school graduate with a semi-skilled background can function in only an extremely limited sedentary range, she is not disabled. The dispositive issue here is the extent of her impairment and resulting limitations.

AR 35-36.

On appeal, plaintiff reasserted her attack on the vocational expert's testimony, arguing that the administrative law judge erred in relying on this testimony as a basis for finding that plaintiff could perform a significant number of jobs existing in the regional or

national economy.  In addition, she argued, the vocational expert had offered inconsistent testimony regarding the frequency with which head movement is required of information clerks and interviewers.  She also argued that the administrative law judge had failed to properly consider her headaches, which he had found to be severe, as well as her asthma, obesity and depression; failed to make a proper finding concerning her credibility; and improperly rejected a physical therapist's functional capacities evaluation.

In response, the commissioner argued that the administrative law judge had made a proper credibility determination that encompassed plaintiff's allegation of disabling headaches and had properly rejected the functional capacity evaluation completed in March 2005 by plaintiff's physical therapist.  With respect to plaintiff's challenge to the administrative law judge's determination at step five of the sequential evaluation process, the commissioner disputed plaintiff's contention that the vocational expert had provided inconsistent testimony regarding the degree of head movement required of the 2,800 information clerk and interviewer jobs he had identified.  The commissioner offered no response at all, however, to plaintiff's argument that the data and assumptions on which the expert had relied for his job estimates was flawed.

In determining that the case had to be remanded for further proceedings, I wrote:

> Plaintiff waged a vigorous attack on the reliability of the expert's testimony both at and after the hearing.  She offered affidavits in support of her claim that the job of "telephone quotation clerk" listed in the <u>Dictionary</u>

4

of Occupational Titles was obsolete and that the alternative job of "mall clerk" identified by the vocational expert did not fit plaintiff's limitations, and she submitted documentary evidence supporting her contention that the data underlying the vocational expert's opinion was unreliable because it was based upon a flawed methodology.  The administrative law judge shrugged off this attack, essentially deeming plaintiff's evidence irrelevant because it was "obvious" that plaintiff was not disabled given her age, background and limitations.  But if it was "obvious" that plaintiff's non-exertional limitations would not significantly reduce the relevant job base, then why didn't the administrative law judge rely on the Medical-Vocational Guidelines and disregard the expert's testimony?  As plaintiff points out, the fact is that, having concluded that plaintiff had non-exertional limitations that prevented her from performing the full range of sedentary work, the administrative law judge could *not* rely on the guidelines and was required to adduce additional, *reliable* evidence to show that a significant number of jobs existed in the regional or national economy that plaintiff could perform.  His mere say-so does not constitute reliable evidence.  Getch v. Astrue, 539 F.3d 473, 482 (7th Cir. 2008).

The commissioner does not argue otherwise.  In fact, the commissioner has not made any argument at all in defense of the administrative law judge's step five rationale.  Nor has the commissioner responded in any fashion to the second part of plaintiff's step-five argument, which is that the vocational expert's testimony does not constitute reliable evidence to back up the administrative law judge's step five finding.   The only argument the commissioner addresses is plaintiff's contention that the vocational expert offered inconsistent testimony regarding the frequency with which head movement is required of information clerks and interviewers, but this is a challenge entirely separate from plaintiff's attack on the reliability of the expert's job data.  With respect to the job data, plaintiff makes a facially persuasive argument why the vocational expert's testimony was flawed regarding the types of jobs plaintiff could perform and their numbers.  Whether the commissioner's failure to respond to that argument was intentional or a mere oversight, he has waived his opportunity to dispute it.  Kochert v. Adagen Medical Int'l, Inc., 491 F. 3d 674, 679 (7th Cir. 2007) (undeveloped arguments are waived).  It may well turn out to be the case that plaintiff's attempt to refute the vocational expert's testimony is a "red herring

5

approach," as the administrative law judge found, but I decline to make that determination without hearing the commissioner's position.

Opin. and Order, June 23, 2009, dkt. #19, at 24-25.


OPINION

A.  Entitlement to Attorney Fees

Under the "substantially justified" standard, a party who succeeds in a suit against the government is not entitled to fees if the government took a position that had "a reasonable basis in law and fact."  Young v. Sullivan, 972 F.2d 830, 835 (7th Cir. 1992) (quoting Pierce v. Underwood, 487 U.S. 552, 566 n.2 (1988)).  To satisfy the substantial justification standard, the government must show that its position was grounded in (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced.  United States v. Hallmark Construction Co., 200 F.3d 1076, 1080 (7th Cir. 2000).  Put another way, "[t]he test for substantial justification is whether the agency had a rational ground for thinking it had a rational ground for its action."  Kolman v. Shalala, 39 F.3d 173, 177 (7th Cir. 1994).  The government carries the burden of proving that its position was substantially justified.  Marcus v. Shalala, 17 F.3d 1033, 1036 (7th Cir. 1994).

The commissioner can meet his burden if there was a "genuine dispute," or if reasonable people could differ as to the propriety of the contested action.  Pierce, 487 U.S. at 565.

When considering whether the government's position was substantially justified, the court must consider not only the government's position during litigation but also its position with respect to the original government action which gave rise to the litigation.  28 U.S.C. § 2412(d)(1)(B) (conduct at administrative level relevant to determination of substantial justification); Gotches v. Heckler, 782 F.2d 765, 767 (7th Cir. 1986).  A decision by an administrative law judge constitutes part of the agency's pre-litigation conduct. Golembiewski v. Barnhart, 382 F.3d 721, 724 (7th Cir. 2004).  "EAJA fees may be awarded if either the government's prelitigation conduct or its litigation position are not substantially justified.  However, the district court is to make only one determination for the entire civil action."  Marcus, 17 F.3d at 1036 (internal citations omitted); see also Jackson v. Chater, 94 F.3d 274, 278 (7th Cir. 1996) (Equal Access to Justice Act requires single substantial justification determination that "simultaneously encompasses and accommodates the entire civil action.").  Thus, fees may be awarded where the government's prelitigation conduct was not substantially justified despite a substantially justified litigation position.  Marcus, 17 F.3d at 1036.

The government argues that because the court agreed with it on several grounds, its position as a whole was substantially justified.  The government is correct that in

7

determining whether the government's position was substantially justified, the court is not to consider "only the one successful order discussed in the remand order," but instead must consider the government's conduct overall. Stewart v. Astrue, 561 F.3d 679, 683 (7th Cir. 2009). "EAJA fees are not determined by the number of successful arguments, but a party's success on a single claim will rarely be dispositive of whether the government's overall position was substantially justified." Id. At the same time, it is not enough for the government to defeat an application for EAJA fees merely by showing that it won more issues than it lost. It still must show that its "litigation positions and overall pre-litigation conduct, including the ALJ's decision itself," had a reasonable basis in law and fact. Id.

The government has not met this burden. Even if I accept its contention that a reasonable basis in law and fact existed for its position with respect to plaintiff's headaches, its implicit concession of error with respect to the step five issue defeats any claim that its position on that issue was "substantially justified," either at the administrative level or in this court. The government argues that its failure to make an argument in response to plaintiff's attack on the reliability of the vocational expert's testimony was "not an admission that Plaintiff was correct on this point," Br. in Opp., dkt. #23, at 6, but in fact, that is the only proper way to treat it. Defendant makes no suggestion that plaintiff's step five challenge was not well-defined in her brief, nor could he: plaintiff devoted four pages to it, making largely the same arguments she made at the administrative level. This is not to suggest that a busy

8

lawyer with numerous briefs to file could not have inadvertently overlooked the issue or accidentally submitted his brief before it was complete.  But to endorse the commissioner's suggestion that the court overlook such "unintentional" concessions would give rise to a situation in which silence could reap greater rewards than effective advocacy.  If the government could avoid fee exposure by saying nothing at the district court level in response to a facially valid attack on the administrative law judge's decision, there would little incentive for it ever to agree to a stipulated remand.  Surely, the EAJA was not intended to produce such a counterintuitive result.

As I made clear in the June 23 order, plaintiff met her burden of showing that the administrative law judge had committed prejudicial error when he deemed it "obvious" that plaintiff was not disabled in spite of her vigorous attack on the vocational expert's testimony and her convincing argument why the vocational expert's testimony did not provide reliable evidence to support the administrative law judge's conclusion.  In the face of the commissioner's silence, I can only conclude that the administrative law judge lacked a reasonable basis in fact or law for his position.  The commissioner compounded this error by failing to agree to remand the case, while at the same time declining to offer any factual or legal justification for the administrative law judge's decision.  Offering no defense in the face of a meritorious challenge is not reasonable litigation conduct.  Overall, the government's position was not substantially justified.

B.  Reasonableness of Fees

In INS v. Jean, 496 U.S. 154, 161 (1990), the Supreme Court held that the district court's task of determining what fee is reasonable under the Equal Access to Justice Act is essentially the same as that described in Hensley v. Eckerhart, 461 U.S. 424 (1983).  Under Hensley, the starting point for determining a reasonable fee is to multiply the number of hours reasonably expended by a reasonable hourly rate.  Hensley, 461 U.S. at 433.  The court should exclude from this initial fee calculation hours that were not "reasonably expended," such as those that are excessive, redundant or otherwise unnecessary, considering factors such as the novelty and difficulty of the questions, the skill required to perform the legal service properly, the customary fee and other factors.  Id. at 434 n.9.  Whether the hours would be properly billed to a client guides the inquiry.  Id. at 434.

Plaintiff seeks compensation for 46.2 hours spent by her lawyer, Barry Schultz, at the rate of $168.75 an hour, and 2.1 hours of legal assistant time at the rate of $85 an hour. Defendant does not object to plaintiff's proposed hourly rates, but he argues that the time spent by plaintiff's counsel in defending the case is excessive.  He does not cite any specific entries or tasks that he finds excessive.  Instead, he argues generally that 46.2 hours was too much time for counsel to have spent on  the case in light of his expertise and the relatively mine-run issues raised on appeal.

10

I disagree.  A review of the time log submitted by plaintiff's lawyer shows that he

spent 3.4 hours reviewing the record and outlining the issues; 26.2 hours drafting the initial

brief; and 8.0 hours drafting the reply brief.  The remainder of the time was spent in

conference with plaintiff or the lawyer who represented her at the administrative level;

reviewing court documents and preparing correspondence; preparing the fee petition; and

drafting two motions for extensions.  I decline to award plaintiff fees for the time (.6 hours)

her lawyer sought seeking extensions of his deadline for filing briefs with the court, as that

cost is not properly laid at the feet of the government.  In all other respects, however, the

time spent was reasonable.  The briefs were well-organized, persuasive and well-written.

Although several of the arguments covered familiar territory, the challenge to the reliability

of the vocational expert's job data was novel, relatively complex and ultimately, successful.

Further, although it is not dispositive, 46.2 hours falls within the range of hours that this

court has found reasonable in other social security appeals.  E.g., Gritzmacher v. Astrue, 07-

C-700-C, Order, January 26, 2009 (awarding fees for 48.70 hours); Seamon v. Barnhart, 05-

C-0013-C, Opin. and Order, Feb. 23, 2006 (combined 50 hours on initial brief and reply

brief not unreasonable); Groskreutz v. Barnhart, 02-C-0454-C, Opin. and Order Feb. 28,

2005 (34.5 hours for work in district court not excessive); Nickola v. Barnhart, 03-C-622-C,

Opin. and Order, November 26, 2004 (roughly 60 hours of combined law clerk and attorney

11

time spent producing plaintiff's briefs not excessive); <u>Kleinhans v. Barnhart</u>, 99-C-328-C, Opin. and Order, Apr. 25, 2002 (awarding fees for 70 hours, including post-remand work).

Accordingly, I will award plaintiff attorney fees in the amount of $8,065.63 ($8,166.88 less $101.25).

ORDER

IT IS ORDERED that the petition of plaintiff for an award of attorney fees and expenses under the Equal Access to Justice Act is GRANTED IN PART AND DENIED IN PART.  Plaintiff is awarded fees and costs in the amount of $8,065.63.  That amount is to be made payable to plaintiff's attorney, Barry A. Schultz.

Entered this 23rd day of October, 2009.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge